1 | Pamela LaBruyere, Bar No. 159233
SOLOMON, GRINDLE, SILVERMAN & SPINELLA, APC
2 | 12651 High Bluff Drive, Suite 300
San Diego, California 92130
3 | Telephone: (858) 793-8500
Facsimile: (858) 793-8263
4 |

5 | Steven A. Micheli, (SBN 89725)
ANDERSON & ANDERSON, LLP
6 | 12625 High Bluff Drive, Suite 301
San Diego, CA 92130
7 | Telephone: (858) 523-1333
Facsimile: (858) 523-1334
8 |

9 | Co-Counsel for Plaintiff and Creditor Eric G. Astone

10 |

**UNITED STATES BANKRUPTCY COURT**

11 |

**SOUTHERN DISTRICT OF CALIFORNIA**

12 |

13 | In Re,

14 | MASAMI TRINK, aka MASAMI
CANTERBURY,

15 |

16 |         Debtor,

17 | _____

18 | ERIC G. ASTONE,

19 |         Plaintiff,

20 | v.

21 | MASAMI TRINK, aka MASAMI
CANTERBURY,

22 |

23 |         Defendant.
_____

Case No.: 08-00136-LA7

Adv. Pro. No.: 08-90142LA

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Trial Date: August 24, 26, 27, 2009
Time:     10:00 a.m.

Judge: Honorable Louise DeCarl Adler

24 |     Plaintiff Eric G. Astone hereby submits the following Proposed Findings of Fact and

25 | Conclusions of Law:

26 | **I.    FINDINGS OF FACT**

27 |     **A.    In accordance with the stipulation of the parties, as set forth in Paragraph**

28 | **3 of the Pre-Trial Order filed on August 6, 2009, the following facts were admitted:**

1.   The Bankruptcy Court has jurisdiction over this proceeding, this is a core proceeding, and venue is proper.

2.   Plaintiff Eric G. Astone is an individual residing in the County of San Diego.

3.   Defendant Masami Trink, formerly known as Masami Canterbury, is an individual residing in the County of San Diego.

4.   Defendant is licensed by the California Department of Real Estate as a salesperson, License No. 011182993.

5.   On September 10, 2004, Plaintiff purchased real property for $950,000 located at 203 La Barranca Drive, Solana Beach, CA 92075.  This transaction is referred to as the "Purchase Transaction," and the property is referred to as the "Subject Property."

6.   In the Purchase Transaction, Mortgage Loan Specialists, Inc., a licensed real estate broker, acted as Plaintiff's real estate broker, and Defendant, licensed under Mortgage Loan Specialists, Inc., acted as Plaintiff's real estate agent.

7.   In the Purchase Transaction, Defendant acted as Plaintiff's mortgage loan broker, arranging two loans in the principal amount of $665,000 and $285,000 to pay the purchase price.

8.   As a result of acting as Plaintiff's real estate agent and arranging the two loans in the Purchase Transaction, Defendant received commissions and fees in excess of $20,000.

9.   The two loans obtained in the Purchase Transaction were secured by first and second Trust Deeds on the Subject Property.

10.   The $665,000 loan was a 30-year loan with a 4.625% interest rate and contained a prepayment penalty.

11.   In the First Refinance, Defendant acted as Plaintiff's mortgage broker.

12.   In the First Refinance, Defendant received commissions and fees in excess of $4,900.

13.   As a result of the First Refinance, Plaintiff paid costs and expenses related to the refinance, including a prepayment penalty of over $12,000 on the refinance of the first loan obtained in the Purchase Transaction.

1   14.  Less than one year after the First Refinance, Defendant, acting as Plaintiff's

2 mortgage loan broker, advised Plaintiff to refinance the two loans obtained in the First

3 Refinance and to obtain two new loans.

4   15.  In September 2005, Plaintiff refinanced the existing two loans by obtaining

5 two new loans in the principal amounts of $1 million and $200,000, with the refinance loans

6 closing on September 14, 2005 and September 16, 2005, respectively.  This transaction is

7 referred to as the "Second Refinance."

8   16.  In the Second Refinance, Defendant acted as Plaintiff's mortgage broker.

9   17.  The first loan in the Second Refinance in the amount of $1 million had a

10 prepayment penalty.

11   18.  In the Second Refinance, Defendant received commissions and fees in excess

12 of $7,500.

13   19.  As part of Second Refinance, Plaintiff paid costs and expenses related to the

14 refinance.

15   20.  In the Second Refinance transaction, Asset Escrow Services, Inc. ("Asset

16 Escrow") was the escrow holder.

17   21.  On August 16, 2005 Plaintiff and Asset Escrow entered into a written

18 agreement consisting of Loan Escrow Instructions, providing for the terms by which Asset

19 Escrow would act as escrow holder in connection with the $200,000 Second Refinance loan.

20   22.  The $200,000 refinance loan was a line of credit, evidenced by a Note and

21 Second Deed of Trust in favor of National City Bank on the Subject Property, with Plaintiff

22 having the ability to borrow on the line of credit as needed, without incurring any obligation

23 to pay interest except to the extent that money was actually advanced to Plaintiff on the line of

24 credit.

25   23.  The entire $200,000 amount on the Second Refinance line of credit was

26 withdrawn.

27   24.  On or about September 16, 2005, Asset Escrow wired the net proceeds from

28 the escrow in the amount of $103,162.33 to Gayle Harmon.

1    25.    As of September 15, 2005, Astone's cell number was 858-344-9261.

2    26.    After the close of the Second Refinance line of credit loan escrow, Plaintiff

3    received $60,000 of the $103,162.33 from Gayle Harmon.

4    27.    After the close of the Second Refinance loan escrow, Gayle Harmon

5    transferred $43,000 of the $103,162.33 to Defendant.

6    28.    Defendant has not paid the $43,000 she received from Gayle Harmon to

7    Plaintiff.

8    29.    Plaintiff has made a demand on Defendant to pay him the $43,162.33.

9    30.    Plaintiff has incurred and paid interest to National City Bank on $43,162.33

10    from September 2005 to the present.

11    31.    From September 2004 until October 2005, Plaintiff and Debtor lived at the

12    Subject Property.

13    32.    In October 2005, Plaintiff moved out of the Subject Property, and Defendant

14    remained at the Subject Property as a resident.

15    33.    Between October 2005 and March 2006, Plaintiff asked Defendant to move out

16    of the property.

17    34.    In March 2006, Defendant moved out of the Subject Property after Plaintiff

18    obtained a Judgment in an Unlawful Detainer action against her and a court order for her to

19    vacate the property.

20    35.    In June 2007, Defendant lost the Subject Property in a foreclosure sale to the

21    holder of the First Deed of Trust.

22    36.    After the foreclosure sale, Defendant continued to be obligated to National

23    City on the Second Refinance $200,000 loan.

24    **B.    After receiving evidence, the Court additionally finds as follows:**

25    37.    In connection with the Purchase Transaction, Defendant told Plaintiff that

26    Defendant would perform services as Plaintiff's real estate agent and mortgage broker without

27    receiving any commissions or fees.

28

1  38.    The representation Defendant made to Plaintiff in the Purchase Transaction

2  that Defendant would not receive any commissions or fees in the Purchase Transaction was

3  false.

4  39.    Plaintiff could not qualify to purchase the Subject Property in the Purchase

5  Transaction as Plaintiff did not make sufficient income or had sufficient assets to make the

6  payments on the two loans that were obtained in the Purchase Transaction.

7  40.    To induce Plaintiff to purchase the Subject Property in the Purchase

8  Transaction and to obtain the loans in the Purchase Transaction, Defendant represented to

9  Plaintiff and advised Plaintiff that Plaintiff had sufficient credit and could qualify to purchase

10  the Subject Property and obtain the loans.

11  41.    In connection with the Purchase Transaction, Defendant inflated Plaintiff's

12  monthly income on written loan applications that were provided to the lenders.

13  42.    Defendant breached fiduciary duties owed to Plaintiff in the Purchase

14  Transaction and in connection with the loans obtained in the Purchase Transaction.

15  43.    Defendant acted fraudulently in the Purchase Transaction and in connection

16  with the loans obtained in the Purchase Transaction.

17  44.    Defendant obtained undisclosed commissions and fees in the Purchase

18  Transaction that Plaintiff must disgorge in the amount of over $20,000.

19  45.    Before the first payment was due on either of the two loans obtained in the

20  Purchase Transaction, Defendant, acting as Plaintiff's mortgage broker, advised Plaintiff to

21  refinance both loans.

22  46.    In reliance on the advice of Defendant, Plaintiff obtained two loans in the

23  principal amounts of $900,000 and $180,000, secured by Trust Deeds on the Subject Property,

24  with the refinance loans closing on November 19, 2004.  This transaction is referred to the

25  "First Refinance."

26  47.    In connection with the First Refinance, Defendant told Plaintiff that she would

27  act as Plaintiff's mortgage broker without receiving any fees or costs.

28

48.    The representation Defendant made to Plaintiff in the First Refinance that she was acting as Plaintiff's mortgage broker without receiving any fees and costs was false.

49.    Defendant obtained undisclosed commissions and fees in the First Refinance that Plaintiff must disgorge in the amount of over $4,900.

50.    To induce Plaintiff to enter into the First Refinance, Defendant falsely advised Plaintiff that Plaintiff could qualify for the higher loans, misrepresented the terms of the loans, and falsified the loan applications by inflating Plaintiff's monthly income.

51.    Defendant knew that Plaintiff was not able to qualify to make the payments on the two new loans in the First Refinance.

52.    Defendant breached her fiduciary duties to Plaintiff in connection with the First Refinance.

53.    Defendant acted fraudulently in connection with the First Refinance.

54.    Defendant made undisclosed commissions and fees in the First Refinance.

55.    In connection with the Second Refinance, Defendant told Plaintiff that she would not receive any commissions or fees for acting as Plaintiff's mortgage broker in the Second Refinance.

56.    The representation Defendant made to Plaintiff in the Second Refinance that she was acting as Plaintiff's mortgage broker without receiving any fees and costs was false.

57.    Defendant obtained undisclosed commissions and fees in the Second Refinance that Plaintiff must disgorge in the amount of over $47,500.

58.    To induce Plaintiff to enter into the Second Refinance, Defendant falsely advised Plaintiff that he could qualify to make the payments on the two loans in the Second Refinance.

59.    Defendant knew that Plaintiff was not able to qualify to make the payments on the two new loans in the Second Refinance.

60.    Acting as Plaintiff's mortgage broker, Defendant handled all communications between Plaintiff and Asset Escrow.

1         61.      After signing the Loan Escrow Instructions, Plaintiff gave written instructions
2 to Asset Escrow concerning the use of the proceeds from the Second Refinance loan escrow,
3 stating that the net proceeds were to be delivered to Plaintiff.

4         62.      Defendant was aware of the terms of the agreement between Plaintiff and
5 Asset Escrow and Plaintiff's instructions to Asset Escrow concerning the use of the proceeds.

6         63.      The day before the $200,000 Second Refinance line of credit closed,
7 Defendant instructed Asset Escrow to withdraw the entire $200,000 from the line of credit,
8 and wire the entire net proceeds in the amount of $103,162.33 to Gayle Harmon, a friend of
9 Defendant.

10         64.      Defendant falsely and fraudulently created an email from Plaintiff's computer
11 so that it would appear as if it was coming from Plaintiff to Asset Escrow with the instruction
12 to wire the net proceeds from the $200,000 line of credit to Gayle Harmon.

13         65.      Defendant converted the $43,162.33 of the $103,162.33 that had been
14 transferred to Gayle Harmon from the Second Refinance line of credit loan.

15         66.      The $43,162.33 was the property of Plaintiff.

16         67.      Defendant breached her fiduciary duties to Plaintiff in the Second Refinance.

17         68.      Defendant acted fraudulently in connection with the Second Refinance.

18         69.      Defendant made undisclosed commissions and fees in the Second Refinance.

19         70.      Plaintiff is entitled to recover from Defendant the $43,162.33 taken from the
20 Second Refinance line of credit as well as the interest incurred and paid to National City Bank
21 from September 2005 to the June 2009 in the amount of $10,422.85.

22         71.      On March 22, 2006, Defendant stole personal property from Plaintiff with a
23 value of over $4,019.

24         72.      Plaintiff is entitled to recover from Defendant the value of the stolen personal
25 property in the amount of $4,019

26         73.      In October 2005, Defendant fraudulently induced Plaintiff to vacate the
27 premises so she could remain in possession without Plaintiff's consent.

28

1    74.    From October 2005 until March 2006, Defendant wrongfully trespassed and

2  had possession of the Subject Property, and refused to vacate the property when asked to do

3  so by Plaintiff.

4    75.    Defendant's refusal to vacate the property from October 2005 until March

5  2006 caused damages to Plaintiff from the inability to use or rent out the Subject Property.

6    76.    The reasonable value of the Subject Property from October 2005 until March

7  2006 was $4000 per month.

8    77.    Plaintiff is entitled to recover from Defendant the damages caused by

9  Defendant's taking possession of the Subject Property in the amount of $4,000 per month for

10  5 months for a total of $20,000.

11    78.    As a result of purchasing the Subject Property and obtaining the loans in the

12  Purchase Transaction, First Refinance and Second Refinance, Plaintiff was unable to afford to

13  make the payments on the loans and lost the Subject Property in foreclosure.

14    79.    As a result of the actions of Defendant in the transactions concerning the

15  Subject Property, Plaintiff was damaged in the amount of $177,300.

16    80.    Defendant's acts in converting money and property from Plaintiff and in taking

17  undisclosed commissions were wilfull and malicious.

18    81.    In performing these acts, Defendant acted with fraud, oppression and malice

19  and an award of punitive is appropriate, and Plaintiff shall recover punitive damages from

20  Defendant. Given Defendant's financial condition, Plaintiff shall recover the amount of

21  $_____ from Defendant for punitive damages.

22    82.    Based on these admitted facts and findings, the Court finds that Plaintiff has

23  been damaged and is entitled to recover from Plaintiff the following amounts for

24  compensatory damages:

25    (a)    Undisclosed commissions and fees of $32,400;

26    (b)    Converted monies in the amount of $43,162.33;

27    (c)    Interest accrued and paid on the $43,162.33 of $10,422.85;

28    (d)    Value of stolen personal property $4,019;

1    (e)    Value of loss of use of Subject Property: $20,000;

2    (f)    Monetary loss from Subject Property $177,300;

3    Total: $287,304.18

## II.    CONCLUSIONS OF LAW

Based on these findings of facts, the Court enters the following conclusions of law:

1.    This Bankruptcy Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1471, 157 and 11 U.S.C §523(a)(2)(A), §523 (a)(4) and §523(a)(6).

2.    This is a core proceeding pursuant to 28 U.S.C. §157.

3.    Venue is proper pursuant to 28 U.S.C. §1409.

4.    The alleged undisclosed fees and commissions from the Purchase and Refinance Transactions, the $43,162.33 converted from the proceeds of the Second Refinance line of credit loan, and the damages caused from the loss of use of the Subject Property were obtained by Defendant through false pretenses, false representations, or actual fraud and the judgment for such damages is nondischargeable pursuant to 11 U.S.C Section 523(a)(2)(A).

5.    Defendant's acts constituted fraud or defalcation while acting in a fiduciary capacity, and the judgment for the debt owed by Defendant to Plaintiff for the losses and damages incurred by Plaintiff as a result is nondischargeable pursuant to 11 U.S.C. Section 523(a)(4).

6.    Defendant committed larceny in taking the $43,162.33 from the proceeds of the Second Refinance line of credit and the personal property of Plaintiff and the judgment for Defendant's debt to Plaintiff resulting therefrom is nondischargeable pursuant to 11 U.S.C. Section 523(a)(4).

7.    Defendant willfully and maliciously injured Plaintiff by her fraudulent acts and defalcations causing willful and malicious injury to Plaintiff, and the judgment for the debt owed by Defendant to Plaintiff is nondischargeable pursuant to 11 U.S.C. Section 523(a)(6).

8.   The amount of the compensatory damages caused by Defendant to Plaintiff that constitutes the debt that is nondischargeable, not including the amount of punitive damages to be awarded to the Plaintiff is $287,304.18.

9.   The amount of the punitive damages Plaintiff shall recover from Defendant is $_____.

10.  A nondischargeable judgment shall be entered against Defendant in the total amount of $_____ plus legal interest.

Dated: August 19, 2009                    ANDERSON & ANDERSON, LLP


                                          By___/s/ Steven A. Micheli
                                          Steven A. Micheli, Attorneys for Plaintiff/
                                          Creditor Eric G. Astone

Dated:  August 19, 2009                   SOLOMON, GRINDLE, SILVERMAN
                                             & SPINELLA, APC


                                          By  /s/ Pamela LaBruyere
                                          Pamela LaBruyere, Attorneys for Plaintiff/
                                          Creditor Eric G. Astone

1 | Pamela LaBruyere, Bar No. 159233
SOLOMON, GRINDLE, SILVERMAN & SPINELLA, APC
2 | 12651 High Bluff Drive, Suite 300
San Diego, California 92130
3 | Telephone: (858) 793-8500
Facsimile:  (858) 793-8263
4 | pamela@sgsslaw.com

5 | Steven A. Micheli, Esq.
ANDERSON & ANDERSON, LLP
6 | 12625 High Bluff Drive, Suite 320
San Diego, CA 93130
7 | Telephone: (858) 523-1333
Facsimile: (858) 523-1334

8 |

9 | Co-Counsel for Creditor ERIC G. ASTONE

10 | **UNITED STATES BANKRUPTCY COURT**

11 | **SOUTHERN DISTRICT OF CALIFORNIA**

12 |

13 | In Re:                                      )    Case No: 08-00136-LA7
                                                )    Adv. No: 08-90142-LA
14 | MASAMI TRINK aka MASAMI          )
CANTERBURY,                              )    Chapter 7
15 |                                               )
                                                )    **CERTIFICATE OF SERVICE**
16 |                    Debtors.              )
                                                )
17 | _____)
                                                )
18 | ERIC G. ASTONE,                       )
                                                )
                    Plaintiff,                  )
19 |                                               )
-vs-                                          )
20 |                                               )
MASAMI TRINK, aka MASAMI         )
21 | CANTERBURY,                             )
                                                )
22 |                    Defendant.            )
                                                )
23 | _____)

24 |                           CERTIFICATE OF SERVICE

25 | STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

26 |         I am employed in the County of San Diego, State of California.  I am over the age of 18 and not a

27 | party to the within action; my business address is 12651 High Bluff Drive, Suite 300, San Diego,

28 | California 92130.

1           On August 19, 2009, I served the foregoing document(s) described as PLAINTIFF'S PROPOSED

2    FINDINGS OF FACT AND CONCLUSIONS OF LAW on the interested parties in this action by

3    placing a true copy thereof enclosed in a sealed envelope addressed as follows:

4    **Attorney for Defendant Masami Trink,**
     **aka Masami Canterbury**

5    Maureen A. Enmark, Esq.
     Ahren A. Tiller, Esq.

6    1230 Columbia Street, Suite 850
     San Diego, CA 92101

7    (800) 492-4033; FAX (866) 444-7026

8    **Bankruptcy Trustee:**
     James L. Kennedy

9    P.O. Box 28459
     San Diego, CA 92198-0459

10   (858) 451-8859

11   /X/    (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United
            States mail at San Diego, California.  I am readily familiar with the firm's business practice for

12          collection and processing of correspondence for mailing with the U. S. Postal Service pursuant to
            which practice the correspondence will be deposited with the U. S. Postal Service this same day

13          in the ordinary course of business.

14   / /    (VIA UPS NEXT DAY AIR) I caused such envelope to be placed in the UPS depository at San
            Diego, California.  I am "readily familiar" with the firm's practice of collection and processing

15          correspondence for mailing.  Under that practice it would be deposited with UPS on this same
            day at San Diego, California in the ordinary course of business.

16
17   / /    (VIA FACSIMILE TRANSMISSION) I caused such document to be sent via facsimile
            transmission on this date during regular business hours to the addressee(s) as shown above.

18   /X/    (Federal)  I declare under penalty of perjury under the laws of the United States of America that I
            am employed in the office of a member of the bar of this court at whose direction the service was

19          made.

20   Executed on August 19, 2009, at San Diego, California.

21
22                                        Holly J. Hard

23
24
25
26
27
28